JS 44  (Rev 09/19)   *MAK*

# CIVIL COVER SHEET   *19-CV-5281*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

## I. (a) PLAINTIFFS
KEVIN ORENDE

**DEFENDANTS**
ACHILLION PHARMACEUTICALS, INC., ET AL.

**(b)** County of Residence of First Listed Plaintiff   **DUTCHESS**
*(EXCEPT IN U S PLAINTIFF CASES)*

County of Residence of First Listed Defendant   **MONTGOMERY**
*(IN U S PLAINTIFF CASES ONLY)*
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brodsky & Smith, LLC, Two Bala Plz , Suite 510
Bala Cynwyd, PA 19004 - 610.667.6200

Attorneys *(If Known)*

**10   5281**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U S Government Plaintiff
- ☒ 3  Federal Question *(U S Government Not a Party)*
- ☐ 2  U S Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
14(a) of Securities and Exchange Act of 1934
Brief description of cause
Materially false and misleading SEC filings disseminated to shareholders

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE

DOCKET NUMBER   **NOV - 8 2019**

DATE   **11.8.19**

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG JUDGE |
|---|---|---|---|---|
| | | | | |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**19   5281**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff ___ 4 Calmer Pl., Hyde Park, NY 12538 ___

Address of Defendant ___ 1777 Sentry Parkway West, Building 14, Suite 200, Blue Bell, Pennsylvania 19422 ___

Place of Accident, Incident or Transaction ___ 1777 Sentry Parkway West, Building 14, Suite 200, Blue Bell, Pennsylvania 19422 ___

---

**RELATED CASE, IF ANY:**

Case Number ___   Judge ___   Date Terminated ___

Civil cases are deemed related when *Yes* is answered to any of the following questions

1  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above

DATE 11/08/2019

*Must sign here*
*Attorney-at-Law / Pro Se Plaintiff*

56294
*Attorney I D  # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- 1  Indemnity Contract, Marine Contract, and All Other Contracts
- 2  FELA
- 3  Jones Act-Personal Injury
- 4  Antitrust
- 5  Patent
- 6  Labor-Management Relations
- 7  Civil Rights
- 8  Habeas Corpus
- 9  Securities Act(s) Cases
- 10  Social Security Review Cases
- ☑ 11  All other Federal Question Cases
  *(Please specify)* ___ Exchange Act of 1934 ___

**B.** *Diversity Jurisdiction Cases:*

- 1  Insurance Contract and Other Contracts
- 2  Airplane Personal Injury
- 3  Assault, Defamation
- 4  Marine Personal Injury
- 5  Motor Vehicle Personal Injury
- 6  Other Personal Injury *(Please specify)* ___
- 7  Products Liability
- 8  Products Liability · Asbestos
- 9  All other Diversity Cases
  *(Please specify)* ___

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration )*

I, Marc Ackerman ___, counsel of record *or* pro se plaintiff, do hereby certify

☑ Pursuant to Local Civil Rule 53 2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 00 exclusive of interest and costs

☐ Relief other than monetary damages is sought

NOV - 8 2019

DATE 11/08/2019

*Sign here if applicable*
*Attorney-at-Law / Pro Se Plaintiff*

56294
*Attorney I D  # (if applicable)*

NOTE  A trial de novo will be a trial by jury only if there has been compliance with F R C P  38

MAK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

KEVIN ORENDE

CIVIL ACTION

v.

ACHILLION PHARMACEUTICALS, INC.
ET AL.

NO

19  5281

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1.03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus · Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security    Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                              ( )

(c) Arbitration · Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos · Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                       ( )

(e) Special Management - Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          (✗)

(f) Standard Management – Cases that do not fall into any one of the other tracks.           ( )

| 11.4.19 | MARC ACKERMAN | Plaintiff |
|---|---|---|
| Date | Attorney-at-law | Attorney for |
| 610 667 6200 | 610 667 9029 | mackerman@brodskysmith.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

NOV - 8 2019

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN ORENDE, Individually and on behalf of all others similarly situated, | §<br>§<br>§ | Case No. _____ \_\_\_\_ |
| Plaintiff, | §<br>§ | CLASS ACTION |
| v. | §<br>§<br>§ | CLASS ACTION COMPLAINT FOR: |
| ACHILLION PHARMACEUTICALS, INC., NICOLE VITULLO, JOSEPH TRUITT, DAVID SCHEER, FRANK VERWIEL, JASON S. FISHERMAN, KURT GRAVES, MICHAEL D. KISHBAUCH, and ROBERT L. VAN NOSTRAND, | §<br>§<br>§<br>§<br>§<br>§<br>§ | (1)Violation of § 14 (d) and 14(a) of the Securities Exchange Act of 1934<br>(2)Violation of § 20(a) of the Securities Exchange Act of 1934<br>(3) Breach of Fiduciary Duties |
| Defendants. | §<br>§<br>§<br>§<br>§ | **JURY TRIAL DEMANDED** |

Plaintiff Kevin Orende ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this shareholder class action on behalf of himself and all other public shareholders of Achillion Pharmaceuticals, Inc. ("Achillion" or the "Company") against Achillion, its Board of Directors (the "Board" or the "Individual Defendants," and collectively with Achillion, the "Defendants"), for breaches of fiduciary duties in conjunction with the proposed buyout and acquisition of Achillion by Alexion Pharmaceuticals and Beagle Merger Sub, Inc. (collectively, "Alexion").

2.     The June 25, 2014 Merger Agreement provides for a business combination whereby the Merger Sub will be merged with and into Achillion. As a result of the Merger (defined below), the separate corporate existence of the Merger Sub will cease and Achillion will continue as the surviving corporation. On the date of the closing of the Merger, Achillion will become a wholly owned subsidiary of Alexion.

3.     Upon consummation of the Merger, each outstanding share of Achillion common stock will be converted into the right to receive (1) $6.30 in cash, without interest (the "Cash Merger Consideration"), and (2) one contractual contingent value right pursuant to the CVR Agreement (the "CVR"). According to the Merger Agreement, each CVR represents the right to receive (1) $1.00 upon the earlier of (i) first dosing of the first patient with ACH-5228 in the first Phase III clinical trial, (ii) the Conversion Date (defined in the CVR Agreement as the date when the first action specified in the protocol for the corresponding Adaptive Trial (as defined in the CVR Agreement) is taken following the decision to modify such Adaptive Trial to proceed as a Phase III clinical trial) for the first Converted Trial (as defined in the CVR Agreement) of any pharmaceutical product containing ACH-5228, and (iii) the first submission of a new drug application to market and sell any pharmaceutical product containing ACH-5528 in the United States (the "Clinical Trial Milestone"), in each case, prior to the fourth anniversary of the consummation of the Merger (the "Clinical Trial Milestone Period"), and (2) $1.00 upon Alexion's first receipt of approval by the FDA of a new drug application which approval grants Alexion the right to market and sell ACH-4471 in the United States (the "Regulatory Approval Milestone") prior to the date that is fifty-four months after the date of the consummation of the Merger (the "Regulatory Approval Milestone Period"). Such payments will be made on or prior to the date that is fifteen (15) business days following the achievement of the Clinical Trial Milestone or the

1

Regulatory Approval Milestone, as applicable (the "Milestone Payment Date").    The Merger Agreement provides "[t]here can be no assurance that the Clinical Trial Milestone will be achieved during the Clinical Trial Milestone Period or that the Regulatory Approval Milestone will be achieved during the Regulatory Approval Milestone Period, and that the resulting payments will be required of Alexion."

4.     Thereafter, on November 5, 2019, Achillion filed a Proxy Statement on Schedule 14A (the "Preliminary Proxy") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction. Notably the Preliminary Proxy is wholly insufficient and provides either materially misleading and or insufficient information for Achillion stockholders to properly analyze whether to vote in favor of the Proposed Transaction, and is therefore a continuation of the Board's breaches of fiduciary duty.

5.     The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes an insufficient sales process in which the Board only paid lip service to its fiduciary duties.

6.     In addition to Alexion's interest in the Proposed Transaction, the deal may also be tainted by conflicts of interest of the Directors and Company executives. Notably, certain of the Company's Directors and senior executive officers may have been motivated to enter into the Proposed Transaction in order to receive benefits not shared equally with Plaintiff and members of the Class (defined below). Under the terms of the Merger Agreement, all illiquid Company options and other incentive awards will vest no later than seven days before the effective date of the Proposed Transaction.

7.     In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duty of candor and duty to maximize shareholder value by, inter alia, (i) agreeing

2

to sell to Alexion without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Alexion without regard for Achillion's public shareholders.  Accordingly, this action seeks to enjoin the shareholder vote relating to the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Achillion's shareholders.

8.      Finally, in violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy on November 5, 2019 with the SEC in an effort to solicit stockholders to vote their Achillion shares in favor of the Proposed Transaction.  The Preliminary Proxy is materially deficient and deprives Achillion stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction.  As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the Company's financial projections; (c) Achillion's financial projections; and (d) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the financial advisor to the Board, Centerview Partners LLC ("Centerview").

9.      Absent judicial intervention, the merger will be consummated, resulting in irreparable injury to Plaintiff and the Class.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Achillion's stockholders, and to recover damages resulting from violations of federal securities laws by Defendants.

3

## PARTIES

10.     Plaintiff is a citizen of the United States and the state of New York.  Plaintiff has at all times relevant hereto has been, and continues to be a shareholder of Achillion common stock.

11.     Defendant Achillion is a clinical-stage biopharmaceutical company, discovers, develops, and commercializes small molecule drug therapies for immune system disorders. Its lead drug candidate is ACH-4471, an inhibitor of factor D that is Phase II clinical trials for patients with paroxysmal nocturnal hemoglobinuria (PNH) and C3 glomerulopathy/immune complex membranoproliferative glomerulonephritis. The company is also developing ACH-5228, a factor D inhibitor that is in Phase I clinical trials; and ACH-5548, a factor D inhibitor, which is in Phase I clinical trials for the treatment of PNH and other complement mediated diseases. It has license agreements with Ora, Inc. for the development and commercialization of ACH-702; and GCA Therapeutics, Ltd for elvucitabine, a nucleoside reverse transcriptase inhibitor for the treatment of hepatitis B infection and human immunodeficiency virus infection. The company was founded in 1998 and is based in Blue Bell, Pennsylvania and located at 1777 Sentry Parkway West, Building 14, Suite 200, Blue Bell, Pennsylvania 19422.  The Company is incorporated in Delaware and trades on the NasdaqGS under the symbol "ACHN."

12.      Defendant Nicole Vitullo has been a member of the Board at all relevant times and also serves as Chair of the Board.

13.     Defendant Joseph Truitt has been a member of the Board at all relevant times.  He also serves as Chief Executive Officer ("CEO") and President of the Company.

14.     Defendant David Scheer has been a member of the Board at all relevant times.

15.     Defendant Frank Verwiel has been a member of the Board at all relevant times.

16.     Defendant James S. Fisherman has been a member of the Board at all relevant times.

4

17.     Defendant Kurt Graves has been a member of the Board at all relevant times.

18.     Defendant Michael D. Kishbauch has been a member of the Board at all relevant times.

19.     Defendant Robert L. Van Nostrand has been a member of the Board at all relevant times.

20.     Defendants named in paragraphs 12-19 are referred to herein as "Individual Defendants" or "Director Defendants."

21.     By reason of their positions as officers and/or directors of the Company, the Individual Defendants named above are in a fiduciary relationship with Plaintiff and the other public shareholders of Achillion and owe them the highest duty of candor and duty to maximize shareholder value, as set forth in further detail herein.

22.     Defendant Achillion is a Delaware corporation that has its headquarters located at 1777 Sentry Parkway West, Building 14, Suite 200, Blue Bell, Pennsylvania 19422. Achillion is a clinical-stage biopharmaceutical company, discovers, develops, and commercializes small molecule drug therapies for immune system disorders. The Company is publicly traded on the Nasdaq under the symbol "ACHN."

23.     Non-Defendant Alexion develops and commercializes various therapeutic products. The company offers ULTOMIRIS (ALXN1210/ravulizumab-cwvz), a monoclonal antibody for the treatment of paroxysmal nocturnal hemoglobinuria (PNH), a genetic blood disorder; and Soliris (eculizumab), a monoclonal antibody for the treatment of PNH, atypical hemolytic uremic syndrome (aHUS), and generalized myasthenia gravis. It also provides Strensiq (asfotase alfa), a targeted enzyme replacement therapy for patients with hypophosphatasia; and Kanuma (sebelipase alfa) for the treatment of patients with lysosomal acid lipase deficiency. In

5

addition, the company conducts Phase III clinical trials for ALXN 1210 (IV) for the treatment of PNH and aHUS; ALXN1210 (Subcutaneous), which is in Phase I for PNH and aHUS; and Soliris (eculizumab) for the treatment of myasthenia gravis and neuromyelitis optica spectrum disorder. Further, it develops ALXN1840 that is in Phase III clinical trials for the treatment of Wilson disease; and ALXN1830, which is in Phase II clinical trials for the treatment of warm autoimmune hemolytic anemia. The company serves distributors, pharmacies, hospitals, hospital buying groups, and other healthcare providers in the United States and internationally. Alexion Pharmaceuticals, Inc. has collaboration and license agreement with Halozyme Therapeutics, Inc. to use drug-delivery technology in the development of subcutaneous formulations for its portfolio of products; collaboration with Dicerna Pharmaceuticals, Inc. to discover and develop RNAi therapies for complement-mediated diseases, as well as with Zealand Pharma A/S; strategic agreement with Caelum Biosciences, Inc. to advance the development of CAEL-101 for light chain amyloidosis; agreement with Stealth BioTherapeutics Corp. to co-develop and commercialize therapy for mitochondrial diseases; and a partnership with Affibody AB. The company was founded in 1992 and is headquartered in Boston, Massachusetts. The Company is publicly traded on NASDAQ Stock Market under the symbol "ALXN."

24.     Non-Defendant Beagle Mer Sub, Inc. is a Delaware corporation and a wholly owned subsidiary of Alexion.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

6

26.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Achillion's principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

28.     Achillion is a clinical-stage biopharmaceutical company, discovers, develops, and commercializes small molecule drug therapies for immune system disorders. Its lead drug candidate is ACH-4471, an inhibitor of factor D that is Phase II clinical trials for patients with paroxysmal nocturnal hemoglobinuria (PNH) and C3 glomerulopathy/immune complex membranoproliferative glomerulonephritis. The company is also developing ACH-5228, a factor D inhibitor that is in Phase I clinical trials; and ACH-5548, a factor D inhibitor, which is in Phase I clinical trials for the treatment of PNH and other complement mediated diseases. It has license agreements with Ora, Inc. for the development and commercialization of ACH-702; and GCA Therapeutics, Ltd for elvucitabine, a nucleoside reverse transcriptase inhibitor for the treatment of hepatitis B infection and human immunodeficiency virus infection.

29.     On March 7, 2019, the Company announced its 4th Quarter and Year-End Financial Results. Defendant Truitt noted, "We made significant progress advancing our portfolio of oral factor D inhibitors in the fourth quarter of 2018," said Joe Truitt, President and Chief Executive Officer at Achillion. "ACH-4471 has demonstrated preliminary proof-of-concept in patients with

7

paroxysmal nocturnal hemoglobinuria (PNH) and C3 glomerulopathy (C3G). We look forward to reporting updated interim results for our Phase 2 trial of ACH-4471 for PNH, in combination with a C5 inhibitor, in the second quarter of 2019. We plan to present data for the PNH and C3G trials to the U.S. Food and Drug Administration (FDA) in the fourth quarter of 2019. We also remain on track to complete the ongoing ex-US Phase 1 multiple ascending dose (MAD) study for our more potent next-generation oral factor D inhibitor, ACH-5228. We anticipate submitting an Investigational New Drug (IND) Application in the US for ACH-5228 in the fourth quarter of 2019."

30.     On May 17, 2019, the Company reported interim data from the phase II paroxysmal nocturnal hemoglobinuria (PNH) trial assessing the safety and effectiveness of factor D inhibitor danicopan in combination with Alexion's intravenous Soliris (eculizumab). The results showed the combination improved anemia levels and decreased transfusions. PNH is thought to be caused by a mutation resulting in the absence of receptors normally present on red blood cells that interact with the complement system. Defendant Truitt commented, "Anemia is a persistent problem in the majority of patients with PNH treated with standard and even high doses of eculizumab. These interim data are encouraging and demonstrate that ACH-4471, when used in combination with a C5 inhibitor, such as eculizumab, has the potential to improve anemia, decrease transfusions and lead to improvement in important clinical parameters of hemolysis as well as quality of life measurements for patients with this devastating condition."

31.     On September 25, 2019, the Company announced that the U.S. Food and Drug Administration (FDA) has granted Breakthrough Therapy designation for danicopan (ACH-4471) for treatment in combination with a C5 monoclonal antibody for patients with paroxysmal nocturnal hemoglobinuria (PNH) who are sub-optimal responders to a C5 inhibitor alone. The

8

FDA's decision was based on positive safety and efficacy data from the ongoing danicopan Phase 2 PNH combination trial. Defendant Truitt noted, "The FDA's granting of Breakthrough Therapy designation for our lead oral factor D inhibitor, danicopan, underscores the urgent need for new treatment options for patients living with PNH." "Danicopan, with its demonstrated ability to limit both intravascular and extravascular hemolysis with oral administration, has the potential to benefit a significant number of patients with PNH that continue to have an unmet medical need on standard of care. We appreciate the review and decision by the FDA and plan to work closely with the Agency in advancing the development of danicopan into Phase 3 in early 2020."

32.      The Company reported that "FDA Breakthrough Therapy designation is designed to expedite the development and review of medicines for serious or life-threatening conditions. Receiving Breakthrough Therapy designation from the FDA indicates preliminary clinical evidence has demonstrated the drug may provide substantial improvement on at least one clinically significant endpoint compared with currently available therapy. The benefits of this Breakthrough Therapy designation include more intensive guidance from FDA on an efficient drug development program, access to a scientific liaison to help accelerate review time and eligibility for Accelerated Approval and Priority Review if relevant criteria are met. Danicopan (ACH-4471) has previously received orphan drug designation for the treatment of PNH in 2017."

33.      Further, in October presentation materials provided on the Company's website, the Company noted it is "[w]ell-funded with approximately $241M cash and investments as of end of 2Q 2019."

34.      Nevertheless, on October 16, 2019, Achillion and Alexion jointly issued a press release and filed it with the United States Securities and Exchange Commission ("SEC") wherein

9

it disclosed the entry by Achillion and Alexion into the Merger Agreement. The joint press release

provides, in relevant part, as follows:

> **BOSTON & BLUE BELL, Pa. – October 16, 2019** - Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Achillion Pharmaceuticals, Inc. (NASDAQ:ACHN) today announced that they have entered into a definitive agreement for Alexion to acquire Achillion, a clinical-stage biopharmaceutical company focused on the development of oral small molecule Factor D inhibitors to treat people with complement alternative pathway-mediated rare diseases, such as paroxysmal nocturnal hemoglobinuria (PNH) and C3 glomerulopathy (C3G). Achillion currently has two clinical-stage medicines in development, including danicopan (ACH-4471) in Phase 2 and ACH-5228 in Phase 1.
>
> "Alexion has demonstrated the transformative impact that inhibiting C5 can have on multiple rare and devastating diseases. However, we believe this is just the beginning of what's possible with complement inhibition," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "Targeting a different part of the complement system – the alternative pathway – by inhibiting Factor D production addresses uncontrolled complement activation further upstream in the complement cascade, and importantly, leaves the rest of the complement system intact, which is critical in maintaining the body's ability to fight infection. We believe this approach has the opportunity to help patients with diseases not currently addressed through C5 inhibition. We look forward to applying our nearly three decades of complement and development expertise to unlock the potential of oral Factor D inhibitors and bring these benefits to patients."
>
> "We have established great momentum – discovering and advancing several small molecules into clinical development that have the potential to treat immune-related diseases associated with the alternative pathway of the complement system," said Joe Truitt, President and Chief Executive Officer at Achillion. "Having already demonstrated proof-of-concept and proof-of-mechanism with our lead candidate, danicopan (ACH-4471), in PNH and C3G, respectively, we believe there is significant opportunity for Factor D inhibition in the treatment of other diseases as well. Alexion is an established leader in developing medicines for complement-mediated diseases, and we look forward to working together to accelerate our objective of bringing novel therapies to patients as quickly as possible and ensuring that the broad promise of this approach is fully realized. We thank our employees, investigators and partners for their incredible work and commitment."
>
> **Transaction Details**
>
> The initial consideration of approximately $930 million, or $6.30 per share of Achillion common stock, will be funded with cash on hand. As part of the acquisition, Alexion will also be acquiring the cash currently on Achillion's balance sheet. As of September 30, 2019, this was approximately $230 million; the actual

amount will be determined as of the transaction close. The transaction includes the potential for additional consideration in the form of non-tradeable contingent value rights (CVRs), which will be paid to Achillion shareholders if certain clinical and regulatory milestones are achieved within specified periods. These include $1.00 per share for the U.S. FDA approval of danicopan and $1.00 per share for ACH-5228 Phase 3 initiation.

Alexion's acquisition of Achillion is subject to the approval of Achillion shareholders and satisfaction of customary closing conditions and approval from relevant regulatory agencies, including clearance under the Hart-Scott Rodino Antitrust Improvements Act. Pending these approvals, the transaction is expected to close in the first half of 2020.

### *The Inadequate Merger Consideration*

35.     Significantly, the Company's financial prospects and opportunities for future growth, and market presence for Alexion establish the inadequacy of the merger consideration. Notably, Alexion will receive approximately $230 million in cash on hand from Achillion.

36.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company. The proposed valuation does not adequately reflect the intrinsic value of the Company. Moreover, the valuation does not adequately take into consideration how the Company is performing, considering the status of the key developmental status of Danicopan and ACH-5228.

37.     As the Philadelphia Inquirer noted in an October 16, 2019 article, the deal is "still less than half the company's value soon after its 2007 initial public stock offering (IPO) or its 2015 high."

38.     The deal also does not adequately take into consideration the synergies that inure to the benefit of Alexion. As noted in an article in BioWorld, "An Alexion strength is inhibiting C5 in rare diseases. It's about 86% of the company's current revenues, but Achillion takes a slightly different space in the complement system ·· the alternative pathway, inhibiting factor D production, which is believed to address uncontrolled complement activation. The treatment also strengthens

11

patients' ability to fend off infection by leaving the rest of the complement system intact." In fact, Ludwig Hantson, Alexion's CEO stated, "We believe this approach has the opportunity to help patients with diseases not currently addressed through C5 inhibition."

39.     Moreover, according to the BioWorld article, ISI Evercore analysts wrote that the transaction is a "strong strategic rationale as a defensive play" for Alexion against its competitors, especially Apellis Pharmaceuticals Inc., which is deep in the complement space. Apellis' lead candidate, APL-2, an infused C3 inhibitor. The analysts said ACH-5228 "could compete effectively with APL-2 on convenience/delivery while potentially offering lower risk of infections." They also noted data from Apellis' PEGASUS phase III study vs. Soliris in anemic PNH patients is expected by year-end. "We expect positive top-line, but are keeping an eye on infection risk given C3 inhibition," they added.

40.     Clearly, while the deal will be beneficial to Alexion, it comes at great expense to Plaintiff and other public stockholders of the Company.

41.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Alexion at the expense of Achillion's public stockholders, which clearly indicates that Achillion's stockholders were not an overriding concern in the formation of the Proposed Transaction.

*Preclusive Deal Mechanisms*

42.     The Merger Agreement contains certain provisions that unduly benefit Alexion by making an alternative transaction either prohibitively expensive or otherwise impossible. Here, for example, the Merger Agreement contains a termination fee provision that requires Achillion to pay Alexion an amount equal to $20 million if the Merger Agreement is terminated under certain circumstances.

12

43.     The termination fee payable under this provision will make the Company that much more expensive to acquire for potential purchasers, while resulting in a corresponding decline in the amount of consideration payable to Achillion's shareholders.

44.     The Merger Agreement also contains a "No Solicitation" provision that restricts Achillion from considering alternative acquisition proposals by, *inter alia*, constraining Achillion's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits Achillion from soliciting any alternative proposal, but permits the Board to consider an ***unsolicited*** "Acquisition Proposal" only if it constitutes or is reasonably calculated to lead to a "Superior Proposal" as defined in the Merger Agreement. However, even the Board's consideration of unsolicited proposal is restricted: prior to considering any such proposal, the Board must determine, in consultation with its financial advisors, that its fiduciary duties *require* it to consider the proposal. Thus, the Board cannot consider alternative proposals even if it reasonably believes that any such proposal would be beneficial to shareholders.

45.     Further, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser. Here, Defendants agreed to provide Alexion information in order to match any other offer, thus providing Alexion access to the unsolicited bidder's financial information and giving Alexion the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Alexion.

46.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

47.     In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control or a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to act in the best interests of the

13

company's shareholders, including the duty to obtain maximum value under the circumstances. To diligently comply with these duties, the directors may not take any action that:

        (a)      adversely affects the value provided to the corporation's shareholders;

        (b)      will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

        (c)      contractually prohibits them from complying with their fiduciary duties; and/or

        (d)      will provide the directors, executives or other insiders with preferential treatment at the expense of, or separate from, the public shareholders, and place their own pecuniary interests above those of the interests of the company and its shareholders.

48.     In accordance with their duty of candor and duty to maximize shareholder value, the Individual Defendants, as directors and/or officers of Achillion, are obligated to refrain from:

        (a)      participating in any transaction where the directors' or officers' loyalties are divided;

        (b)      participating in any transaction where the directors or officers are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

        (c)      unjustly enriching themselves at the expense or to the detriment of the public shareholders.

49.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff and the other public shareholders of Achillion, including their duty of candor and duty to maximize shareholder value. As a result of the Individual Defendants' divided loyalties,

14

Plaintiff and Class members will not receive adequate, fair or maximum value for their Achillion common stock in the Proposed Transaction.

50.     As a result of these breaches of fiduciary duty, the Company's public shareholders will not receive adequate or fair value for their common stock in the Proposed Transaction.

### CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Achillion common stock who are being and will be harmed by Defendants' actions described herein (the "Class"). The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

52.     This action is properly maintainable as a class action because, *inter alia*:

(a)     The Class is so numerous that joinder of all members is impracticable. Achillion's stock is publicly traded on the Nasdaq and as of November 1, 2019, there were over 140 million common shares of Achillion stock outstanding. Moreover, the holders of these shares are geographically dispersed throughout the United States;

(b)     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions include, *inter alia*: (i) whether the Individual Defendants have engaged in self-dealing, to the detriment of Achillion's public shareholders; (ii) whether the Proposed Transaction is unfair to the Class, in that the price is inadequate and is not the fair value that could be obtained under the circumstances; (iii) whether Defendants have violated the federal securities laws; and (iv) whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated;

15

(c)      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. The claims of Plaintiff are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class;

(d)      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

(e)      Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, preliminary and final injunctive relief on behalf of the Class as a whole is appropriate.

## *Potential Conflicts of Interest*

53.      The substantial interests of the Individual Defendants and other Company insiders themselves cannot be ignored. Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for significant amounts of money upon the consummation of the Proposed Transaction as follows:

16

| Name[1] | Number of Shares Subject to Vested In the Money Options (#) | Cash Consideration for Vested In the Money Options ($) | Number of Shares Subject to Unvested In the Money Options (#) | Cash Consideration for Unvested In the Money Options ($) | Number of CVRs Issued in Respect of In the Money Options (#) | Maximum Cash Payment for CVRs Issued in Respect of In the Money Options ($) | Number of Phantom CVRs in Respect of Out of the Money Options (#) | Maximum Cash Payment for Phantom CVRs in Respect of Out of the Money Options ($) |
|---|---|---|---|---|---|---|---|---|
| **Non-Employee Directors** | | | | | | | | |
| Nicole Vitullo | 154,625 | 501,936 | 22,375 | 81,404 | 177,000 | 354,000 | 50,000 | 37,000 |
| Jason S. Fisherman, M D | 174,625 | 562,336 | 22,375 | 81,404 | 197,000 | 394,000 | 50,000 | 37,000 |
| Kurt Graves | 239,625 | 366,236 | 22,375 | 81,404 | 262,000 | 524,000 | 30,000 | 22,800 |
| Michael D Kishbauch | 110,875 | 364,186 | 22,375 | 81,404 | 133,250 | 266,500 | 30,000 | 22,800 |
| David Scheer | 174,625 | 562,336 | 22,375 | 81,404 | 197,000 | 394,000 | 50,000 | 37,000 |
| Robert L. Van Nostrand | 174,625 | 562,336 | 22,375 | 81,404 | 197,000 | 394,000 | 50,000 | 37,000 |
| Frank Verwiel, M.D | 79,625 | 259,936 | 22,375 | 81,404 | 102,000 | 204,000 | 30,000 | 22,800 |
| **Executive Officers** | | | | | | | | |
| Joseph Truitt[2] | 799,578 | 2,326,516 | 1,851,188 | 6,631,565 | 2,650,766 | 5,301,532 | 242,000 | 168,980 |
| Brian Di Donato | 50,000 | 187,000 | 650,000 | 2,566,000 | 700,000 | 1,400,000 | . | |
| Paul Firuta | 100,000 | 298,000 | 500,000 | 1,718,000 | 600,000 | 1,200,000 | — | — |
| Anthony Gibney | 125,000 | 471,250 | 575,000 | 2,237,750 | 700,000 | 1,400,000 | — | - |
| Martha Manning[2] | 173,437 | 477,383 | 326,563 | 1,167,267 | 500,000 | 1,000,000 | 110,000 | 166,100 |
| Dr Steven Zelenkofske | 125,000 | 476,250 | 575,000 | 2,252,750 | 700,000 | 1,400,000 | — | — |

54.     In addition, pursuant to the Merger Agreement, as a consequence of the merger, each outstanding and unvested Company option and/or restricted stock will automatically vest and/or be converted into the right to receive cash or stock in certain amounts. As a result, the Individual Defendants will receive immediate lump sum cash payments in exchange for their (collective) thousands of currently illiquid Achillion options and restricted stock.

55.     Further, certain members of management, including Defendant Truitt, are eligible for "golden parachute" payments as part of the merger-related consideration, as follows:

| Name[1] | Cash ($)[2] | Equity ($)[3] | Pension / NQDC ($) | Perquisites / Benefits ($)[4] | Tax Reimbursement ($)[5] | Total ($) |
|---|---|---|---|---|---|---|
| Joseph Truitt | 1,658,300 | 12,102,077 | . | 31,349 | 679,294 | 14,471,020 |
| Paul Firuta | 756,000 | 2,918,000 | - | 20,899 | 478,245 | 4,173,144 |
| Anthony Gibney | 648,000 | 3,637,750 | - | 20,899 | | 4,306,649 |
| Dr. Steven Zelenkofske | 774,000 | 3,652,750 | - | 20,899 | . | 4,447,649 |

56.     Clearly, based on the above, the Proposed Transaction is the product of an unfair and inadequate sales process conducted by the Board and Company insiders with an eye to

17

personal compensation and in breach of its fiduciary duties and which fails to maximizer stockholder value.

***The Materially Incomplete and Misleading Proxy Statement***

57.     On November 5, 2019, Achillion filed with the SEC a materially misleading and incomplete Preliminary Proxy that, in violation their fiduciary duties, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

> *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

58.     Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy fails to disclose:

(a)     The nature of the confidentiality agreement entered into between the Company on the one hand and Alexion on the other, both in general and specifically regarding any standstill restrictions included therein, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away; and

> *Omissions and/or Material Misrepresentations Concerning Achillion's Financial Projections*

59.     The Preliminary Proxy fails to provide material information concerning financial projections provided by Achillion management and relied upon by Centerview in its analyses. The

18

Preliminary Proxy discloses management-prepared financial projections for the Company which are materially misleading.

60.     The Preliminary Proxy indicates that in connection with the rendering of Centerview's fairness opinion, Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities, probabilities of success and prospects of Achillion, including certain financial forecasts, analyses and projections relating to Achillion prepared by management of Achillion and furnished to Centerview by Achillion for purposes of Centerview's analysis, which are referred to in this summary of Centerview's opinion as the "Management Projections," and which are collectively referred to in this summary of Centerview's opinion as the "Internal Data.""

61.     Accordingly, the Preliminary Proxy should have, but fails to provide, certain information in the projections that Achillion management provided to the Board and Centerview. Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

62.     The Preliminary Proxy fails to provide material information concerning the financial projections prepared by Achillion management. Specifically, the Preliminary Proxy fails to disclose material line items for the Non-GAAP measures, including Unlevered Free Cash Flow ("UFCF"). Such line items are required to allow a reconciliation of all provided non-GAAP metrics to GAAP metrics.

19

63.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

64.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Achillion are unable to properly evaluate the Company's true worth, the accuracy of Centerview' financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

65.     In the Preliminary Proxy, Centerview describes its respective fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

66.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

(a)     The specific inputs and assumptions used to calculate the discount rate range of 11.0% to 13.0% used;

(b)     The fully-diluted shares of the Company as of October 4, 2019; and

(c)     The projected terminal values.

20

67.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

68.     With respect to the *Selected Public Company Analysis*, the Prelimianry Proxy fails to disclose the following:

> (a)     The basis for the decision to utilize a reference range of Enterprise Values between $250 million to $450 million.

69.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy fails to disclose the following:

> (a)     The basis for the decision to utilize a reference range of Transaction Values between $400 million to $925 million.

70.     Without the omitted information identified above, Achillion' public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Achillion' public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests. As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Stockholders.

**FIRST COUNT**

**Breach of Fiduciary Duty against the Individual Defendants**

71.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72.     As alleged herein, Defendants have initiated a process to sell Achillion that undervalues the Company and vests them with benefits that are not shared equally by Achillion's

21

public shareholders.   In addition, by agreeing to the Proposed Transaction, Defendants have

capped the price of Achillion at a price that does not adequately reflect the Company's true value.

Moreover, Defendants failed to sufficiently inform themselves of Achillion's value, or disregarded

the true value of the Company, in an effort to benefit themselves.   Furthermore, any alternate

acquirer will be faced with engaging in discussions with a management team and board that is

committed to the Proposed Transaction.

73.   As such, unless the Individual Defendants' conduct is enjoined by the Court, they

will continue to breach their fiduciary duties to Plaintiff and the other members of the Class, and

will further a process that inhibits the maximization of shareholder value and the disclosure of

material information.

74.   Plaintiff and the members of the Class have no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(a) of the Exchange Act
### Against All Defendants

75.   Plaintiff repeats all previous allegations as if set forth in full herein.

76.   Defendants have disseminated the Preliminary Proxy with the intention of soliciting

stockholders to vote their shares in favor of the Proposed Transaction.

77.   Section 14(a) of the Exchange Act requires full and fair disclosure in connection

with the Proposed Transaction.   Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means
> or instrumentality of interstate commerce or of any facility of a national
> securities exchange or otherwise, in contravention of such rules and
> regulations as the [SEC] may prescribe as necessary or appropriate in the
> public interest or for the protection of investors, to solicit or to permit the
> use of his name to solicit any proxy or consent or authorization in respect
> of any security (other than an exempted security) registered pursuant to
> section 78*l* of this title.

22

78.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

79.     The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

80.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

81.     The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

82.     The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act
### Against The Individual Defendants

83.     Plaintiff repeats all previous allegations as if set forth in full herein.

84.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to Company stockholders.

85.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

86.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Achillion's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that

24

the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

87.    The Individual Defendants acted as controlling persons of Achillion within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Achillion to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Achillion and all of its employees.  As alleged above, Achillion is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.    Declaring that this action is properly maintainable as a class action, certifying Plaintiff as Class representative and certifying his counsel as class counsel;

B.    Temporarily and permanently enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction;

C.    To the extent the Proposed Transaction is consummated before entry of this Court's judgment, rescinding it and setting it aside or awarding rescissory damages;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

25

E.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff prays for a jury trial on all issues and in all proceedings so triable.

Dated: November 8, 2019                                    Respectfully submitted,

BRODSKY & SMITH, LLC
Marc L. Ackerman (PA Bar 56294)
Ryan P. Cardona (PA Bar 316350)
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
Tel: (610) 667-6200
Fax: (610) 667-9029

26

# EXHIBIT "A"

## PLAINTIFF'S CERTIFICATION

I, Kevin Orende ("Plaintiff"), declare under penalty of perjury, as to the claims asserted under the federal securities laws, that.

1.   Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2.   Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3    Plaintiff is willing to serve as a representative party on behalf of the class. including providing testimony at deposition and trial, if necessary.

4    Plaintiff's transactions in Achillion Pharmaceuticals, Inc. (NASDAQ GS. ACHN) of securities during the Class Period specified in the Complaint are as follows (use additional sheet if necessary).

| DATE | # OF SHARES PURCHASED | # OF SHARES SOLD | PRICE |
|------|----------------------|------------------|-------|
| 08.15.2019 | 225 | 0 | 42.99 SEK or ≈4.46 USD |

5.   During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed as follows:]

6    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of November, 2019.

Sign Name.

Print Name: Kevin Orende

Address: 4 Calmer Place

State, Zip Code: Hyde park, New York 12538

County/Country (if not USA): Dutchess